[No. 11974. Department Two. September 17, 1914.]

CHRISTIAN D. HANSEN *et al.*, *Appellants*, v. POLSON LOGGING COMPANY, *Respondent*.[1]

RAILROADS — RIGHT OF WAY — LOCATION OF ROAD — SUBSTANTIAL COMPLIANCE. Where a deed granting a right of way for a railroad contained certain conditions relating to the location of the road across streams on the land, so as not to interfere with logging operations therein, and provided "that said right of way and the railroad and logging road thereon shall be placed as near as practicable to the hill so as not to injure the prairie land more than is necessary," but failed to further describe the hill or prairie land, construction of the road over a route selected by the grantee was a substantial compliance with the conditions of the deed, where the evidence showed that the road, though not constructed as near the hill as practicable, complied more nearly with other conditions of the deed as a feasible and practicable road, and it was shown that the grantor had visited the property while the road was being constructed and made no objection to the location.

Appeal from a judgment of the superior court for Chehalis county, Irwin, J., entered August 26, 1913, upon find-

[1]Reported in 142 Pac. 1169.

ings in favor of the defendant, after a trial on the merits before the court, in an action of ejectment. Affirmed.

*William E. Campbell*, for appellants.

*Bridges & Bruener*, for respondent.

FULLERTON, J.—On January 27, 1906, the appellants, for a substantial consideration, conveyed to the respondent, by deed, a strip of land fifty feet in width, being twenty-five feet on each side of the center line of the railroad track of the respondent as the same might be thereafter surveyed, laid out, constructed and operated through, across, and over certain specifically described fractional parts of sections 20, 21, 28, 29 and 33, in Township 20, North of Range 10, West of the Willamette Meridian. The conveyance was limited in its duration to such period as the respondent, its successors and assigns should use the land for railroad and logging road purposes. The deed contained a number of conditions, one of which was that the road as located should not cross the creeks and streams on the land so as to interfere with "any new dam being built thereon," or with the sluicing of logs in such streams, and it was provided that all damage done to the railroad when constructed by the sluicing of logs should be borne by the respondent. The deed also contained the further provision, namely: "And it is further agreed that said right of way and the railroad and logging road thereon shall be placed as near as practicable to the hill so as not to injure the prairie land more than is necessary." No description of the hill or prairie land is given further than is contained in this clause of the deed. It appeared from the evidence, however, that a somewhat level tract of land lay within the boundaries of the fractional parts of sections 28 and 29, which was commonly known as Axford prairie, and that to the north of this was a hill that extended in a northwesterly and southeasterly direction across the north part of the lands described as being in section 28, and the northeast quarter of the lands described as being in section

29, against which the north side of the prairie abutted. The east and west boundary of the prairie are not very clearly defined, but it seems to have extended from near the east boundary of the appellants' land in section 28, westerly to a line slightly beyond the center line of section 29.

The respondent definitely located its line of road through the premises in 1907. It made two, and for the greater part of the way three, distinct surveys; one called the X line, which ran through the southern part of the prairie; another which began near the northwest corner of section 29 and followed practically a straight line to eastern boundary of the appellants' land near the center of the west half of section 28; a third was run to the north of the last mentioned line, following more closely the sinuosities of the foot of the hill. In definitely locating the road, the respondent adopted the straight line mentioned. In giving reasons for the selection of this line the respondent's witnesses stated that it was the most practicable course for a road of the two northern lines mentioned, and more nearly complied with the terms of the conveyance than did the X line; that near the center of section 29 was a creek, running in a southerly direction, known as Hansen creek, on which there was a sluice dam placed near the northern boundary of the section, and the straight line crossed this creek at the most feasible place for a bridge over the same, sufficiently far away so as not to interfere with the sluicing of logs through the dam, or the breaking up of log jams that were liable to accumulate in the creek immediately below the dam; that the line adopted also afforded better facilities than would a line further north for complying with certain other conditions of the deed, namely, the putting in of a spur track, the construction of the cattle and team crossings, and crossings for hauling logs thereover.

The appellant's evidence tended to show that a feasible road could have been built nearer the hill by a line intersecting the prairie land some distance north of the place

where the adopted line intersects it, and crossing Hansen creek some 250 feet north and closer to the dam than the adopted line crosses it. It was conceded, however, by all of the witnesses that this line was not as practicable a line for a railroad as the one adopted, since it would require some four additional curves, and require much deeper excavations to bring it to grade, than was required by the adopted line. It was in testimony also that it would cross Hansen creek on an angle, making it more difficult to construct and maintain a bridge which would stand the erosion caused by floating logs under it. The road as located runs close to the hill through a portion of section 28, but gradually departs therefrom as it proceeds westerly, the extreme distance reached being some 350 or 400 feet.

The road was actually constructed in 1912. Concerning the occurrences during its construction, the court found the following facts:

"On April 13th, 1912, the defendant in the construction of its road, had just reached the edge of what is termed the 'prairie' on plaintiffs' lands, and had graded and constructed its road a distance of about nine hundred feet westward from a point where plaintiffs now contend defendant should have turned to the north from its present constructed road, about three hundred feet of said finished road being upon the lands of the said plaintiffs and extending just to the edge of what is termed the prairie. On that day one of the plaintiffs rode over the defendant's road as far as the cars were running, and then walked on the graded road up to the edge of the prairie, thus observing the part that was constructed and also the portion that was graded, and could see the direction the defendant company was taking and he made no objection whatsoever to the construction of the road where it was nor to the course on which the road was being extended. On said day, to wit: April 13th, 1912, the right of way which had been definitely located and staked out across plaintiffs' lands in the year 1907, had been cleared of all brush, stumps, etc., and defendant's employees were working on said road on plaintiffs' lands where the road now is.

"In the month of July or August, 1912, the plaintiff C. D. Hansen and his family, camped for a week on the so-called prairie, and at that time the road was graded and the track laid across plaintiffs' lands as far as Hansen Creek, and the defendant had commenced the construction of the bridge across said Hansen Creek, which bridge is a very substantial and expensive bridge of its kind. Said C. D. Hansen made no objection at that time to the location of the said road, but remained silent and allowed the said defendant to construct and complete its said bridge where it now is and construct about eight hundred feet of track westward beyond the said creek, which the said plaintiffs now are objecting to."

The appellants conceived that the respondent had violated the condition of the deed relative to the location of the road across the prairie, and brought this action to require it to remove the road from its present location. The court adjudged the issues against them, and from the judgment entered, they appeal.

Conceding that the condition of the deed upon which the appellants rely is a condition precedent rather than a condition subsequent, we think the court rightly determined the issues upon the facts. While he rested his judgment on the facts found by way of estoppel, in our opinion it could have been rested on the ground that the construction of the road over the route selected was a substantial compliance with the condition of the deed. The right granted was at best indefinite as to its location. The respondent was entitled to a feasible and practicable road. In obeying the particular behest in the deed on which the appellants rely, it was obligated to take into consideration the other conditions mentioned, and to construct its road as far as practicable so as to give effect to all of these conditions. The evidence, to our minds, abundantly justifies the conclusion that it did do so, and without following the matter further, we conclude that the appellants have no cause of complaint.

The judgment is affirmed.

CROW, C. J., PARKER, and MOUNT, JJ., concur.